UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHEYANNE CARVALHO,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>　　　　　Defendant. | No.  2:21-cv-01099 CKD (SS)<br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying applications for Disability Income Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), respectively.  The parties have consented to Magistrate Judge jurisdiction to conduct all proceedings in the case, including the entry of final judgment.  For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

BACKGROUND

Plaintiff, born in 1974, applied in August 2018 for DIB and SSI, alleging disability beginning January 1, 2018.  Administrative Transcript ("AT") 38.  Plaintiff alleged she was unable to work due to epilepsy, migraine, post-traumatic stress disorder (PTSD), obsessive-

1

compulsive disorder, and substance abuse, currently in remission. AT 81. In a decision dated October 22, 2020, the ALJ determined that plaintiff was not disabled.[1] The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2020.
>
> 2. The claimant has not engaged in substantial gainful activity since January 1, 2018, the alleged onset date.
>
> 3. The claimant has the following severe impairments: epilepsy; migraine; post-traumatic stress disorder (PTSD); anxiety disorder; depressive disorder; attention-deficit disorder; obsessive-compulsive disorder; and substance abuse, currently in remission.
>
> 4. The claimant does not have an impairment or combination of

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

> impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work, but she is limited to no more than frequent balancing, stooping, kneeling, crouching, crawling, and climbing of ramps and stairs. She cannot climb ropes, ladders, or scaffolds. She cannot work around unprotected heights. She must avoid concentrated exposure to moving mechanical parts. She is limited to no commercial driving. She is limited to understanding, remembering, and carrying out simple, routine, and repetitive tasks. She is able to use judgment only on simple work-related decisions. She is also limited to no more than occasional interaction with coworkers and the public.
>
> 6. The claimant is unable to perform any past relevant work.
>
> 7. The claimant was born [in 1974] and was 43 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.
>
> 8. The claimant has at least a high-school education.
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills.
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.[2]
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2018 through the date of this decision.

AT 31-40.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ erred at step five by failing to resolve an apparent inconsistency between the VE's testimony and the Dictionary of Occupational Titles; (2) the ALJ erred at step three by finding that plaintiff's headaches did not equal Listing 11.02; and (3) the ALJ erred in evaluating

---

[2] The ALJ relied on vocational expert (VE) testimony that someone with plaintiff's assessed residual functional capacity (RFC) could perform the requirements of jobs such as Assembler, Small Products; Hand Packer; and Production Machine Operator, all unskilled light-exertional jobs. AR 39.

plaintiff's subjective symptom testimony.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

**A. Failure to Resolve Inconsistencies with the DOT**

Plaintiff claims that at step five the ALJ did not resolve an apparent inconsistency between the VE's testimony and the Dictionary of Occupational Titles. Plaintiff argues that the RFC, which barred concentrated exposure to moving mechanical parts and restricted her to occasional interaction with coworkers and the public, conflicted with the jobs the VE testified she

could perform: small products assembler, hand packer, and production machine operator. Plaintiff claims all three jobs were obviously inconsistent with the RFC, requiring the ALJ to question the VE further.

The United States Department of Labor, Employment & Training Administration's Dictionary of Occupational Titles ("DOT") is routinely relied on by the SSA "in determining the skill level of a claimant's past work, and in evaluating whether the claimant is able to perform other work in the national economy." Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990). The DOT classifies jobs by their exertional and skill requirements. The DOT is a primary source of reliable job information for the Commissioner. 20 C.F.R. § 404.1566(d)(1); see Johnson v. Shalala, 60 F.3d 1428 (9th Cir. 1995) (reliance on the DOT acts as a presumption that may be rebutted by the testimony of a vocational expert); see also Social Security Ruling 00-4p (providing that when there is an apparent unresolved conflict between the vocational expert's testimony and the DOT, the ALJ must clarify the discrepancy). Under Zavalin v. Colvin, 778 F.3d 842, 846 (9th Cir. 2015), "[w]hen there is an apparent conflict between the [VE's] testimony and the DOT – for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle – the ALJ is required to reconcile the inconsistency." In order to trigger the ALJ's duty to inquire, the conflict between the VE's testimony and the DOT's job description must be "obvious or apparent." Gutierrez v. Colvin, 844 F.3d 804, 808 (9th Cir. 2016). The Gutierrez court continued:

> This means that the testimony must be at odds with the Dictionary's listing of job requirements that are essential, integral, or expected. . . . [T]asks that aren't essential, integral, or expected parts of a job are less likely to qualify as apparent conflicts that the ALJ must ask about. Likewise, where the job itself is a familiar one—like cashiering—less scrutiny by the ALJ is required.

Id.

At the September 16, 2020 hearing, the VE testified that plaintiff had worked in the past as a receptionist and waitress. AT 69. The VE testified that someone with plaintiff's assessed RFC could not perform past relevant work, but could perform other jobs in the national economy,

such as small products assembler, hand packer, and production machine operator—all light, unskilled jobs. AT 69-70. The ALJ questioned the VE as follows:

> Q: Is your testimony consistent with the DOT?
>
> A: Yes.
>
> Q: And hypo two, let's assume such an individual would be off task 20 percent of the time and miss two days of work a month. Can such an individual perform any work?
>
> A: No, Your Honor. Either of those talking points [will] render the individual not employable . . . based on my experience.

AT 70-71. Plaintiff's attorney questioned the VE about a sit-stand option. AT 72.

Defendant argues that plaintiff waived this challenge to the ALJ's decision by failing to raise it either at the hearing or before the Appeals Council, despite being represented by counsel in these agency proceedings. The Ninth Circuit has held that, unless manifest injustice would result, claimants must generally "raise all issues and evidence at their administrative hearings in order to preserve them on appeal," at least when claimants are represented by counsel. Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999). This is because the ALJ as the fact-finder, rather than a federal court reviewing under a substantial evidence standard of review, is the appropriate person to resolve factual and evidentiary inconsistencies. Indeed, at the administrative hearing, the vocational expert is subject to cross-examination by plaintiff's representative.

However, the Ninth Circuit has clarified that "a counsel's failure does not relieve the ALJ of his express duty to reconcile apparent conflicts through questioning: When there is an apparent conflict between the vocational expert's testimony and the DOT—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency." Lamear v. Berryhill, 865 F.3d 1201, 1206 (9th Cir. 2017). See Sahaj v. Commissioner, No. 2:16–cv–02563–CKD, 2018 WL 1502006, at *3 (E.D. Cal. March 27, 2018) ("Whether or not plaintiff's attorney challenged these conflicts at the hearing, the ALJ was required to sufficiently develop the record to address any deviation from the DOT. Therefore, plaintiff properly raises an issue that was

preserved for appeal.").[3]

Turning to the merits of plaintiff's claim, plaintiff argues that the RFC's requirement that she "avoid concentrated exposure to moving mechanical parts" is in apparent conflict with the following highlighted language in the DOT:

- **Assembler, Small Products (DOT 706.684-022).** Performs any combination of following repetitive tasks on **assembly line** to mass produce small products, such as ball bearings, automobile door locking units, speedometers, condensers, distributors, ignition coils, drafting table . . . [etc.] . . . Bolts, screws, clips, cements, or otherwise fashions parts together by hand or **using hand tools or portable powered tools.**

- **Hand Packer (DOT 920.687-010).**[4] Affixes lids on apple-filled barrels, **using foot-operated or power-driven press, or hand mallet and cooper's iron.** May rearrange top layer of fruit to make lid fit properly. May fashion lids on other containers.

- **Production Machine Operator (DOT 363.685-010). Tends pressing-machine (hot-head type)** to press washed wearing apparel, such as uniforms, jackets, aprons, and shirts: Smooths section of garment on buck (table) of the machine, and moistens dry portions of garment with wet cloth or water spray. Pushes buttons to lower pressing head of machine to press and dry garment. Rearranges garment on buck, repeating process until pressing is complete. . . . **May tend two or three presses simultaneously.**

(ECF No. 21 at 9-10) (emphasis in original).

In the first job, small products assembler, working on an assembly line can be reasonably said to conflict with an RFC barring "concentrated exposure to moving mechanical parts." Had this been the only job identified by the VE, the ALJ would have committed harmful error by failing to ask the VE to resolve the conflict. In the remaining two jobs, however, the conflict is less-than-apparent or nonexistent. As a production machine operator, plaintiff would be operating the pressing machine (an industrial-sized clothes iron) herself, not be exposed to "moving mechanical parts." See Spears v. Berryhill, 2018 WL 70789, at *10 (C.D. Cal. Feb. 5,

---

[3] Defendant's argument that Lamear is distinguishable because plaintiff did not raise the issue before the Appeals Council is not persuasive, as defendant cites no case directly on point, and this position appears unsupported by the weight of caselaw.

[4] This occupation, identified by the VE, is listed as Apple-Packing Header (Agriculture) in the current online version of the DOT. Its definition is one cited by plaintiff, above. See AT 39, 70.

2018) (RFC prohibiting the operation of "moving mechanical parts" and "moving machinery" did not preclude the use of machines altogether); Wigmore v. Colvin, 2013 WL 1900621, at *18 (D. Or. Apr. 16, 2013) ("ALJ's hypothetical to the VE limited the use of 'moving or otherwise dangerous machinery,' as opposed to 'machines' or 'machinery' generally."), accepted by 2013 WL 1900617 (D. Or. May 7, 2013). Similarly, as an agricultural hand-packer, plaintiff would affix lids to fruit barrels with simple tools under her control, not experience "concentrated exposure to moving mechanical parts." As to the latter two jobs, there is no obvious conflict with the DOT that would trigger the ALJ's duty to question the VE further. Thus, any error as to the first job was harmless.

Plaintiff also makes a cursory argument that the above jobs conflict with her RFC for "occasional interaction with coworkers or the public." As to the job of small products assembler, she cites the following DOT language: "Frequently works at bench as member of assembly group." (ECF No. 21 at 10, citing DOT 706.684-022.) As to the job of production machine operator, she cites the following DOT language: "May work as part of a team." (Id., citing DOT 363.685-010.) However, plaintiff cites no relevant language in the DOT description for the job of agricultural hand packer, a job that apparently can be done with little-to-no teamwork. See DOT 920.687-010. Because the VE identified at least one available job with no obvious conflicts with the RFC, and plaintiff has shown no reason she could not perform this job, any error by the ALJ in failing to question the VE about the other two jobs is harmless.

**B. Headaches**

Plaintiff next argues that at step three the ALJ should have found she met Listing 11.02 for epilepsy due to her migraine headaches. Plaintiff asserts that the ALJ "completely failed to address Plaintiff's severe migraine headache impairment" and "should have provided a detailed description of a typical headache event, including all associated phenomena" in making the step three determination. (ECF No. 21 at 13.) Defendant argues that plaintiff has not carried her burden to show that her impairment satisfies all the criteria of one of the sub-parts of Listing 11.02.

At step three of the sequential evaluation process, the ALJ considers whether one or more

of the claimant's impairments meets or equals an impairment listed in Appendix 1 to Subpart P of the regulations. 20 C.F.R. § 416.920(a)(4)(iii).  Each Listing sets forth the "symptoms, signs, and laboratory findings" which must be established for a claimant's impairment to meet the Listing. Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999).  If a claimant meets or equals a Listing, the claimant is considered disabled without further inquiry.  20 C.F.R. § 416.920(d).  Listing 11.02 for epilepsy can be used to assess whether a migraine disorder functionally equals a listing. Social Security Ruling 19-4p.[5]  The various sections of Listing 11.02 require different frequency of episodes, despite adherence to prescribed treatment. 20 C.F.R. pt. 404, subpt. P, app'x 1, § 11.02; see AT 32 (ALJ lists criteria to meet sub-parts of Listing 11.02).

The ALJ addressed plaintiff's migraines and epilepsy in the body of the decision, noting that plaintiff allegedly suffered seizures and "needs to lie down throughout the day."  AT 35; see AT 55-56 (hearing testimony that plaintiff had "grand mal seizures" lasting up to one minute, multiple times per month), 57-58 (testimony that plaintiff had such seizures since she was 23 years old and was able to work for a number of years due to her seizures being "controlled' with medication); 60-61 (testimony that plaintiff had migraines multiple times a week and was taking medication for them), 65 (testimony that plaintiff had fewer seizures than in the past).

As to the medical evidence of these conditions, the ALJ wrote:

> The claimant's epilepsy started after a traumatic brain injury in 2003, but she was able to work for many years afterwards.  Although an electroencephalogram done in June 2020 was abnormal, MRIs of her brain generally revealed no significant abnormalities concerning her epilepsy.  Her neurologic examinations were generally normal during the adjudicative period.  With respect to her migraines, medications are admittedly helpful and she has not required repeated emergency care or extended hospitalizations for this condition.

AT 35-36 (record citations omitted).  The ALJ set forth a detailed summary of treatment records during the alleged period of disability, showing that plaintiff reported far fewer seizures to treatment providers than the 5-6 per month she claimed at the hearing, and that her seizure

---

[5] Headaches that "occur independently and are not caused by another medical condition," termed "primary headaches," are not a listed impairment. SSR 19-4p, 2019 WL 4169635, at *3, *7 (Aug. 26, 2019).

condition improved with medication and lifestyle changes, such as not using alcohol. AT 36; see also AT 37 ("[A]s discussed in detail above, the claimant's alleged seizure frequency during the adjudicative period is not well supported by the medical records"). At step three of the sequential evaluation, the ALJ set forth the conditions for meeting the epilepsy listing and concluded that, "[b]ecause there is little objective evidence of such seizures, listing 11.02 is not met." AT 32.

It is plaintiff's burden to prove that she medically equaled Listing 11.02. For example, Paragraph B of listing 11.02 requires dyscognitive seizures occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment. SSR 19-4p, 2019 WL 4169635, at *7 (Aug. 26, 2019). Paragraph D of listing 11.02 requires dyscognitive seizures occurring at least once every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatment, and marked limitation in one area of functioning. Id. Plaintiff does not identify which sub-part of the listing is applicable and, in her reply brief, merely argues that ALJ should have incorporated migraine-related limitations in the RFC. Plaintiff cites progress notes in April and May 2019 stating that plaintiff's "migraines have been ongoing and she gets 15-20 a month[.]" AT 918. One such note states: "Her seizure frequency has reportedly been improving with [increased medication]. However, she has since noted increasing seizures (8/9/week). This however is complicated by her alcohol use disorder." AT 926. Plaintiff also cites her hearing testimony about experiencing frequent seizures and taking medication for migraines. AT 55-58, 60-61. Insofar as plaintiff's subjective statements may be said to satisfy Paragraph B or D criteria, the ALJ found plaintiff less than fully credible, as discussed below. Moreover, plaintiff does not address certain criteria of the 11.02 listing (e.g., symptoms for "at least 3 consecutive months"). Plaintiff has not shown harmful error with respect to epilepsy and/or migraines at step three.

**C. Credibility**

Plaintiff argues that the ALJ erred in finding her subjective symptom testimony less than fully credible. The ALJ summarized plaintiff's testimony as follows:

> The claimant complains of seizures, migraines, anxiety, depression, suicidal ideation, flashbacks, nightmares, sleep disturbance, decreased energy, restlessness, racing thoughts, hallucinations,

10

> social withdrawal, and irritability. She allegedly has difficulty leaving home being around people, interacting and getting along with others, concentrating, and remembering information. She allegedly needs to lie down often during the day.

AT 35. The ALJ found that "the claimant's statements concerning the intensity, persistence, and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained below." AT 35.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); see also Lambert v. Saul, 980 F.3d 1266, 1277–78 (9th Cir. 2020).

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. See id. at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. When discounting subjective testimony, an ALJ must provide "specific, clear, and convincing *reasons* for doing so." Wade v. Saul, 850 F. App'x 568, 569 (9th Cir. 2021) (emphasis in original), citing Lambert v. Saul, 980 F.3d 1266, 1277–78 (9th Cir. 2020). This standard does "not require ALJs to perform a line-by-line exegesis of the claimant's testimony[.]" Lambert, 980 F.3d at 1277. However, an ALJ's detailed overview of the claimant's medical

history—coupled with a nonspecific boilerplate conclusion that her testimony is "not entirely consistent" with her medical treatment—is not enough to satisfy the minimal requirements for assessing credibility. Id. at 1277–78.

At the first step of the required credibility analysis, the ALJ found objective evidence of medical impairment, finding the following impairments to be severe: epilepsy, migraine, PTSD, anxiety disorder, depressive disorder, attention-deficit disorder, obsessive-compulsive disorder, and substance abuse, currently in remission. AT 32. The ALJ proceeded to discuss aggravating factors, medication, treatment, and functional restrictions with respect to these conditions. See, e.g., AT 36 (finding that medical records did not support plaintiff's claimed frequency of seizures and that, as to alleged psychological symptoms, "treatment records documented generally adequate mental functioning"); AT 37 (finding "little evidence that [plaintiff's] substance abuse caused any debilitating functional problems" and that "the apparent lack of serious mental difficulties during the hearing is somewhat inconsistent with the alleged severity of her symptoms.").

Plaintiff takes issue with only a few aspects of the ALJ's credibility analysis. First, she argues that the ALJ erroneously supported his credibility finding by noting that plaintiff "has not required repeated emergency care or extended hospitalization" for migraines. (ECF No. 21 at 16, citing AT 36.) Second, plaintiff asserts that the ALJ erred by considering that plaintiff "received little specialized mental health treatment after 2016 and did not get mental health treatment again until March 2020." (Id., citing AT 36.) Neither constitutes error, however. See 20 C.F.R. § 404.1529(a) (ALJ consider "all of the available evidence," including a claimant's "medical history"); Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) (evidence of conservative treatment may be "sufficient to discount a claimant's testimony regarding severity of an impairment"). Plaintiff also takes issue with the ALJ's assessment of her daily activities, though her argument is unclear. (ECF No. 21 at 17, citing AT 37.) In her reply brief, plaintiff appears to abandon her credibility arguments and does not address the issue.

Because the ALJ used the proper process and provided proper reasons in his credibility analysis, the court defers to his discretion.

CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 21) is denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 27) is granted; and

3. Judgment is entered for the Commissioner.

Dated: July 27, 2023

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/carvalho1099.bothdibssi.ckd